CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 22, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Alexander Pryor, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:24-cv-00078 |
| Gotham Greens Butterhead, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter is before the court on a motion to dismiss filed by Defendant Gotham Greens Butterhead, LLC ("Gotham") (Dkt. 9). For the reasons outlined below, Gotham's motion will be granted.

### I.     Background

**A. Factual History**

The facts in this section are taken from Plaintiff Alexander Pryor's complaint and supporting exhibit and are accepted as true when resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

Gotham, a New York limited liability company, owns and operates a hydroponic greenhouse in Stevensburg, Virginia. (Compl. ¶ 5 (Dkt. 1).) It grows produce, including lettuce, and sells its products in grocery stores and to restaurants and food service companies. (*Id.* ¶ 8.)

In February 2024, Gotham hired Pryor as a Plant Manager in its Stevensburg facility. (*Id.* ¶ 9.)  Upon starting, Pryor improved the facility's production and reduced labor costs, leading to a "glowing review" from his direct supervisor, Beth Gantz—the Senior Vice President of Operations.  (*Id.* ¶ 10.)  And Gantz promised that Pryor would receive a raise for his excellent performance.  (*Id.*)

In performing his duties as a Plant Manager, Pryor "raised concerns regarding black mold growing extensively under and around the facilit[y's] lettuce plants."  (*Id.* ¶ 11.)  Pryor repeatedly asked for remedial measures to remove the mold, yet despite providing photographs of the problem, the concern was consistently ignored by Gotham's upper management.  (*Id.*)

In May 2024, third-party testing confirmed the presence of mold, yeast, and Salmonella on samples from the Stevensburg facility.  (*Id.* ¶ 12.)  Forwarding this information to Gantz, Pryor noted that Gotham "should rethink its 'No Need To Wash' label" and that the results reflected a safety concern for employees.  (*Id.*)  On August 8, 2024, Pryor wrote to Anothony Vecchio, Director of Maintenance and Safety for Gotham, and Gantz reiterating his concerns and relaying that he had seen a sharp increase in caterpillar feces on the lettuce at the Stevensburg facility.  (*Id.* ¶ 13.)  Pryor raised with them that the caterpillar feces levels were beyond the standard for safe working conditions and outlined basic safety precautions he intended to implement to protect the staff.  (*Id.*)  Gantz responded, inquiring whether N95 masks were really necessary and noting that while they could be effective, they could also be burdensome to wear.  (*Id.* ¶ 14.)  Pryor replied that he intended to distribute a comfortable N95 mask and noted that a significant respiratory hazard existed not only because of the

caterpillar feces, but because of mold growing on the feces. (*Id.*) Vecchio replied to Pryor's warning "with concern [about] whether Pryor had already told the staff about the health risks they were facing." (*Id.* ¶ 15.) Pryor clarified that he had not told the staff about the risks, and was bringing it to upper management's attention first. (*Id.*)

The very next day, August 9, 2024, Pryor took scheduled leave. (*Id.* ¶ 16.) When he returned on August 16, 2024, Gantz asked him to attend a meeting regarding the promised raise. (*Id.*) No raise was given at the meeting, and instead, Gotham informed Pryor that he was being terminated immediately "in the best interest of the company." (*Id.* ¶ 17.) Pryor then voiced his belief that his termination was made in retaliation for raising safety concerns. (*Id.* ¶ 18.) In response, Gotham's representatives at the meeting "did not deny or otherwise respond . . . and instead repeated scripted talking points." (*Id.*) Afterwards, Gotham provided Pryor with a letter which stated that Pryor was not to disclose information he learned while working at the facility. (*Id.* ¶ 19; Compl. Ex. 1 (Dkt. 1-1).)

**B. Procedural History**

Pryor filed this lawsuit against Gotham on October 28, 2024, in the U.S. District Court for the Western District of Virginia, Charlottesville Division.[1] (*See* Compl.) The complaint asserts two causes of action. First, Pryor raises a claim for wrongful termination in violation of public policy under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). (*Id.* ¶¶ 20–27.) Second, Pryor raises a claim for wrongful termination in violation of Virginia's Whistleblower Protection Law ("VWPL"), Va. Code Ann. § 40.1-27.3. (*Id.* ¶¶ 28–31.) As

---

[1] While the complaint names "Gotham Greens Farms LLC" as the defendant, (*see* Compl.), notice was provided that the correct name of the entity is Gotham Greens Butterhead, LLC, (Dkt. 7).

- 3 -

relief, Pryor requests back pay, reimbursement for lost benefits, lost future wages, $250,000 in punitive damages, attorney's fees and legal costs, as well as prejudgment interest. (*Id.* at 6.)

On January 13, 2025, Gotham filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted. (*See* Dkt. 9 [hereinafter "Mot."].) Gotham asks the court to grant the motion and dismiss the complaint with prejudice. (Def.'s Mem. in Supp. of Its Mot. to Dismiss Pl.'s Compl. at 7 (Dkt. 10) [hereinafter "Gotham Mem."].) Pryor filed a response opposing the motion, (Pl.'s Opp'n to Def.'s Mot. to Dismiss (Dkt. 11) [hereinafter "Pryor Resp."]), to which Gotham replied, (Def.'s Reply Mem. in Supp. of Its Mot. to Dismiss Pl.'s Compl. (Dkt. 12) [hereinafter "Gotham Reply"].)

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the

plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In addition to the facts alleged in the complaint, the court may examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines*, 822 F.3d at 166.

### III. Analysis

#### A. Count I: Claim under *Bowman v. State Bank of Keysville*

Gotham moves to dismiss Count I by arguing that the Virginia Occupational Safety and Health ("VOSH") Act creates the exclusive right at issue and remedy for Pryor's underlying claims and that Pryor does not allege that he administratively exhausted any claim under the Act. (Gotham Mem. at 3–5.) In response, Pryor "does not oppose dismissal of Count I." (Pryor Resp. at 1.) Accordingly, the court will grant Gotham's motion to dismiss Count I and dismiss this count without prejudice.

#### B. Count II: Claim under Virginia's Whistleblower Protection Law ("VWPL")

In Count II, Pryor asserts that Gotham violated the VWPL by terminating him because of his good faith report to his supervisor concerning safety issues he observed. (Compl. ¶ 30.) Gotham moves to dismiss this claim by arguing that the complaint fails to allege that Pryor reported a violation of federal or state law or regulation. (Gotham Mem. at 5–7.) Without addressing whether his reports relate to a violation of law, Gotham contends, Pryor fails to adequately plead that he engaged in an activity protected by the VWPL. (*Id.*)

The VWPL provides, in part, that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of

employment, because the employee . . . in good faith reports a violation of any federal or state law or regulation to a supervisor." Va. Code Ann. § 40.1-27.3(A)(1). "[T]o state a claim under the statute, the plaintiff must allege facts sufficient to show that '(1) []he made a good faith report of a federal or state violation to a supervisor, (2) was discharged by h[is] employer, and (3) h[is] report was the 'but for' cause of h[is] discharge.'" *Workman v. LHC Grp., Inc.*, No. 1:23-CV-048, 2024 WL 3572305, at *3–4 (W.D. Va. July 29, 2024) (quoting *Moore v. Copper River Shared Servs., LLC*, No. CL-2023-9565, 2024 WL 5454690, at *9 (Va. Cir. Ct. Jan. 30, 2024)). Gotham's argument concerns the first element, as its motion does not challenge whether Pryor was discharged or the but-for cause of that discharge.

In establishing the first element, a "plaintiff is not required to show that the underlying report of unlawfulness was in fact meritorious." *Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 550 (W.D. Va. 2023). However, "a 'good faith' report requires a showing not only that the plaintiff subjectively believed that the reported conduct violated the law, but also that this belief was objectively reasonable." *Workman*, 2024 WL 3572305, at *3 (citing *Wood*, 661 F. Supp. 3d at 550). Accordingly, to state a claim, the plaintiff must have "subjectively and reasonably believed" that the reported conduct violated a law or regulation. *Id.* To survive a motion to dismiss, the "plaintiff must plausibly link the reported misconduct to violations of law." *Id.* at *4 (collecting cases). It is not enough for the plaintiff to allege that they reported "misconduct" or "unethical practices." *Id.* Instead, the plaintiff must allege sufficient facts that show the reports made concerned "violation[s] of any federal or state law or regulation." Va. Code Ann. § 40.1-27.3(A)(1).

Pryor concedes that he did not "cite a specific statute" when making his complaints. (Pryor Resp. at 3.) But he argues that "when a complaint is 'self-evidently a complaint about a violation of federal law,' a plaintiff does not need to specifically identify a violation of law to state a claim under the VWPL." (*Id.* (quoting *Isernia v. Danville Reg'l Med. Ctr., LLC*, No. 4:22-CV-00022, 2024 WL 4697681, at *12 (W.D. Va. Nov. 6, 2024)).) Pryor alleges that his statement to his supervisors that the caterpillar feces level was beyond "*the standard* for safe working conditions" is sufficient to constitute a good faith report of any federal or state law or regulation. (*Id.* at 3–4; *see* Compl. ¶ 13, *see also id.* ¶ 25.) And Pryor additionally asserts that he "references both the federal and state general safety requirements in [his] Complaint, and then incorporates those paragraphs in [his] Count II." (Pryor Resp. at 4 (citing Compl. ¶¶ 21, 28).) In Paragraph 21, as part of Count I, Pryor alleges that "[l]ike the federal 'OSHA' statute, the Virginia Occupational Safety and Health Administration "VOSHA", under VA Code § 40.1–51.1(A), requires an employer to provide a safe place to work for each employee." (Compl. ¶ 21.) And in Paragraph 28, Pryor later "incorporates by reference the foregoing paragraphs" into his Count II.[2] (*Id.* ¶ 28.)

The court finds that Pryor has not plausibly alleged that he can satisfy the first element needed to state a claim under the VWPL. Pryor was required to allege not only that he

---

[2] Pryor's reliance on the federal OSHA regulations is misplaced based on the allegations in his current complaint and responsive memorandum. The only reference to OSHA in the complaint is in passing, in a brief comparison to VOSHA. (*See* Compl. ¶ 21.) Pryor attempts to claim that OSHA is so "engrained in American culture and knowledge," such that he should not be required to cite it in his complaint. (Pryor Resp. at 4 & n.3.) But identifying and generally referring to the federal OSHA statute in his responsive memorandum is insufficient to support this claim when it was not mentioned in his complaint. *See Isernia*, 2024 WL 4697681, at *12 ("[T]he court only looks to the Complaint on a motion to dismiss, not to *post hoc* allegations raised in later pleadings.") (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 450 (4th Cir. 2011)).

- 7 -

subjectively believed that the reported conduct violated the law, but also that this belief was "objectively reasonable." *Workman*, 2024 WL 3572305, at *3. In order "[t]o satisfy the objective reasonableness component of this analysis . . . a report must be rooted in *specific* violations of law." *Workman v. LHC Grp., Inc.*, No. 1:23-CV-048, 2025 WL 474923, at *5 (W.D. Va. Feb. 12, 2025) (internal quotation marks omitted) (emphasis added). But Pryor has not alleged sufficient facts showing that his reports of "a sharp increase in caterpillar . . . feces," "feces levels [that] were beyond the standard for safe working conditions," or "a significant respiratory hazard" were reports about violations of "federal or state law or regulation[s]." *See Chenault v. RBI Corp.*, 108 Va. Cir. 529, 2021 WL 8776245, at * (Va. Cir. Ct. Oct. 22, 2021) (plaintiff's allegation that he "voic[ed] concerns" and "object[ed] to a cavalier attitude" concerning his company's noncompliance with CDC and Virginia COVID-19 mask mandates did not state a claim). Although Pryor mentions "the standard for safe working conditions" in the complaint, he fails to plead sufficient facts showing that his reports to the supervisors were something that "objectively resembl[ed] 'a violation of any federal or state law or regulation.'" *Workman*, 2025 WL 474923, at *5 (citing *Colquitt v. Bon Secour Mercy Health,* No. 4:21-CV-53, 2022 WL 479093, at*5 (E.D. Va. Feb. 16, 2022)).

Moreover, Pryor does not allege that he informed his supervisors that he believed the safety concerns he reported violated any Virginia or federal law or regulation. *See Workman*, 2024 WL 3572305, at *4. Nor does Pryor allege that he knew that an applicable law or regulation even existed at the time of his report. *See id.* While Pryor is not required to prove that the amount of caterpillar feces and mold actually violated the Virginia or federal statute or regulation, he still must sufficiently plead facts that show that his alleged belief of a violation

- 8 -

was reasonable. Because Pryor does not link the presence of the excessive mold or caterpillar feces to violations of law in his complaint beyond stating that it exceeds a "standard," the court will dismiss Pryor's claim under the VWPL without prejudice with leave to amend his complaint.[3]

## IV.     Conclusion

For the foregoing reasons, Gotham's motion to dismiss (Dkt. 9) is **GRANTED**. The complaint is **DISMISSED without prejudice**. Pryor is granted leave of court to file an amended complaint within thirty (30) days if he so chooses.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 22nd day of April, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[3] Gotham asserts that Pryor's complaint must be dismissed with prejudice due to futility. (Gotham Mem. at 7.) As support, Gotham cites a number of sources for the broad proposition that there are no federal or state laws or regulations that govern the presence of mold in greenhouses whatsoever. The court does not consider that assertion now, however. It is possible that Pryor could allege additional facts concerning the "standard" or test results that may sufficiently bring his claims under the VWPL. In addition, Gotham submits no authority concerning any laws or regulations governing the safe amount of caterpillar feces in a workplace. Accordingly, the court declines to dismiss the complaint with prejudice at this juncture.